[No. 24367. Department One. January 5, 1933.]

PAUL J. KRUESEL, *Individually and as Treasurer of Spokane County, Appellant,* v. ALVIN H. COLLIN *et al., Respondents.*[1]

[1]Reported in 17 P. (2d) 854.

*Dillard & Powell,* for appellant.

*Chas. W. Greenough* and *A. O. Colburn,* for respondents.

BLAKE, J.—This is an action to enjoin the issuance by defendants, as commissioners and officers of Spokane county, of general obligation bonds in the amount of five hundred thousand dollars. From a judgment dismissing the action and adjudicating the validity of the bonds, the plaintiff appeals.

The following facts are disclosed by the record: Between October 31st, 1930, and November 30, 1932, the county incurred indebtedness for indigent relief in the amount of $631,128.52. This indebtedness has been funded to the amount of $450,000 by ''funding bonds, series A,'' issued in that amount November 1st, 1932. The validity of that issue was sustained in *Kruesel v. Collin,* 170 Wash. 1, 16 P. (2d) 442. The present issue is designed to fund the balance of the above-mentioned indebtedness, and to provide a cash fund for indigent relief to meet the requirements therefor from December 1st, 1932, to March 15th, 1933.

The record shows that there are seven thousand families dependent on the county. There is no available cash to clothe and feed them. The urgency of the situation is not questioned nor is the amount, proposed to meet it, challenged. So far, the situation has been met by the issuance of warrants for which there has been a market at par. Recently, however, the warrants have been subjected to a discount of three per cent, which may, at any time, be increased to ten per cent or more.

Confronted with the problem of rapidly increasing cost, which might become prohibitive, the county commissioners decided to put indigent relief on a cash basis. To that end, they authorized the bond issue here in question. The appellant challenges its validity on the grounds that the county has no express authority to issue bonds for that purpose; and that the issue is in contravention of Rem. Rev. Stat., § 3997-6, the so-called county budget act.

Section 3997-1 of this act provides that county officers, on or before the second Monday of August of each year, shall file with the county auditor a detailed estimate of expenditures for the ensuing year. Section 3997-4 provides for the adoption of the budget on the basis of the estimated expenditures. Section 3997-5 limits expenditures to amounts fixed in the budget, except in cases of emergency provided for in § 3997-6. In such cases of emergency, of which this is one, the limit fixed by the budget may be exceeded. *Kruesel v. Collin,* *supra.* So far as it is pertinent to the question here raised, Rem. Rev. Stat., § 3997-6, provides:

"All emergency expenditures shall be paid for by the issuance of emergency warrants which shall be paid from any moneys on hand in the county treasury in the fund properly chargeable with such expenditures and the county treasurer is hereby authorized and directed to pay such warrants out of any moneys in the treasury in such fund. If at any time there shall be insufficient moneys on hand in the treasury to pay any of such warrants, then such warrants shall be registered, bear interest and be called in the manner provided by law for other county warrants.

"The county auditor shall include in the annual budget to be submitted to the county commissioners the total amount of emergency warrants issued during the preceding fiscal year and the county commissioners shall include in their tax levy a levy sufficient to raise

an amount equal to the total of such warrants: Provided, that the county commissioners, if they deem it advisable, instead of including the amount of such emergency warrants in their budget levy may fund the same or any part thereof into bonds in the manner provided by law.''

It is contended that this provides an exclusive method of meeting obligations of the character here in question; that such obligations can be met only by the issuance of warrants. But this contention does not take into account Rem. Rev. Stat., § 5575, which provides:

''Each and every organized county of this state, and each and every county that may hereafter be organized in this state, is hereby authorized and empowered by and through its board of county commissioners to contract indebtedness for general county purposes *in any manner when they deem it advisable,* not exceeding an amount, together with the existing indebtedness of such county, of one and one-half per centum of the taxable property in such county, to be ascertained by the last assessment for the state and county purposes previous to the incurring of such indebtedness.'' (Italics ours.)

It is a cardinal rule of statutory construction that, where there are two or more statutes dealing with the same subject, they will be construed so as to maintain the integrity of both. Repeal by implication is not effected unless the terms of the later act are irreconcilable with the first. *State ex rel. Oregon R. & N. Co. v. Clausen,* 63 Wash. 535, 116 Pac. 7; *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645. We do not so find the provisions of the budget act with reference to Rem. Rev. Stat., § 5575. The budget act itself contemplates ''borrowings,'' for, in Rem. Rev. Stat., § 3997-5, it is provided:

''Moneys received from borrowings shall be used for no other purpose than that for which borrowed ex-

cept that if any surplus shall remain after the accomplishment of the purpose for which borrowed, it shall be used to redeem the county debt.''

■ But, it is contended, Rem. Rev. Stat., § 5575, does not give counties express authority to issue bonds for this purpose; that the power to borrow does not carry with it the power to issue bonds. There is authority for this position. The authorities on the subject, however, are not harmonious. 6 McQuillan, Municipal Corporations (2d ed.), § 2437. The better rule, we think, is that, where the power to borrow is granted, the power to issue bonds is implied if the borrowing is to enable the county to perform a duty or function imposed upon it by the state. *Doty v. Ellsbree,* 11 Kan. 209; *Lund v. Chippewa County et al.,* 93 Wis. 640, 67 N. W. 927, 34 L. R. A. 131; *Heilbron v. Cuthbert,* 96 Ga. 312, 23 S. E. 206; *Rushville Gas Co. v. Rushville et al.,* 121 Ind. 206, 23 N. E. 72, 16 Am. St. 388, 6 L. R. A. 315; *Williamsport v. Commonwealth,* 84 Pa. St. 487, 24 Am. St. 208; *Commissioners of Hendersonville v. Webb & Co.,* 148 N. C. 120, 61 S. E. 670; *Bennett v. Commissioners of Rockingham County,* 173 N. C. 625, 92 S. E. 603. In the last cited case, it is said:

''When county commissioners have power to contract a debt or to provide for valid debts already contracted, they may, in the exercise of good business prudence, issue county bonds in evidence of the obligation; . . .''

■ Rem. Rev. Stat., § 9984, makes it mandatory upon the county to care for the indigent. It has been recently held by this court that this is a governmental function, and, in the execution of it, the county may exceed the constitutional debt limit. *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26.

This obligation having been imposed upon the coun-

ty by the state, the commissioners may, in the performance of it, borrow money by means of a bond issue under Rem. Rev. Stat., § 5575. *Rust v. Kitsap County,* 111 Wash. 170, 189 Pac. 994.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, MILLARD, and HOLCOMB, JJ., concur.